UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
KARAKI NAVIGATION.,          :

        Plaintiff,          :

   - against -          :          07 CV 6161 (NRB)
                                                                          ECF CASE

BUNGE SA,          :

        Defendant.          :
----------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE WHY COUNTER-SECURITY SHOULD NOT BE POSTED, OR, IN THE ALTERNATIVE, TO VACATE MARITIME ATTACHMENT

Defendant, BUNGE SA (hereinafter referred to as "Defendant" or "Bunge"), by and through its attorneys, Tisdale Law Offices LLC, submits this memorandum of law in support of its order to show cause why counter-security should not be posted by the Plaintiff, Karaki Navigation S.A. (hereinafter referred to as "Plaintiff" or "Karaki"), or, in the alternative, to vacate maritime attachment. Bunge seeks an expedited hearing in accordance with Local Admiralty Rule E.1 which provides that an "adversary hearing" under Supplemental Rule E(4)(f) "shall be conducted... within three court days, unless otherwise ordered."

### FACTS

On February 14, 2007, Plaintiff time-chartered the MV "SVYATAYA YEKATERINA" (hereinafter referred to as the "Vessel") to the Defendant for "one time charter trip via South Brazil or Plate with grains/grain products or sugar via safe port(s), safe berth(s), safe anchorage(s), always afloat... for duration about 55-60 days without guarantee." *See Charter Party annexed to the Affidavit of Lauren C. Davies (Davies Aff't) as Exhibit 1.* Upon information and belief, the Vessel loaded cargo in Paranagua, Brazil for delivery at Aqaba,

TISDALE LAW OFFICES   Fax:203-254-1641   Jul 27 2007 10:55am   P002/010

Jordon, on or about May 9, 2007. Thereafter, the Vessel loaded cargo for delivery at Jeddah, Saudi Arabia. During the course of the charter, the Vessel failed to perform as warranted. *See Answer and Counterclaim at* ¶ 7. As a result of the Vessel's underperformance, the Defendant lost time during its voyages and is entitled to a credit for hire payments made and/or a reduction in the amount of hire still outstanding. *See Answer and Counterclaim at* ¶ 8. The value of time lost as a result of the underperformance of the Vessel amounts to $250,753.13, exclusive of interest, costs and attorneys fees. Thus, with interest, attorneys' fees, and costs included, the Defendant expects to recover a total of $577,949.41 in the London arbitration proceedings which have been initiated in this matter. *See Answer and Counterclaim at* ¶ 11. These meritorious counterclaims grow out of the same transaction as the claims alleged by the Plaintiff in its Amended Verified Complaint.

Other disputes arose between the parties including claims for alleged damage to cargo and alleged failure to pay hire. *See Amended Complaint at* ¶ 29. On July 2, 2007, Plaintiff filed a Verified Complaint alleging damages in the total sum of $5,681,879.87 despite the fact that Clause 80 of the Charter Party designates that "liability for cargo claims shall be borne by the Owners and Charterers in accordance with the Inter Club New York Produce Agreement." *See Inter Club Agreement annexed to the Davies Aff't. as Exhibit 2.* Thus, the ICA also forms a part of the contact between the parties.

The Inter Club New York Produce Agreement ("ICA") provides in paragraph 4 that:

> Apportionment under this Agreement shall only be applied to cargo claims where:
> ... (c) the claim has been properly settled or compromised and paid.

At the time the Verified Complaint was filed, Plaintiff had not settled, compromised or paid any of its alleged $3,045,119.55 cargo claim. Thus, these alleged claims were premature and unripe.

2

*See Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 2007 U.S. Dist. LEXIS 19531, 06 Civ. 15308 (CSH) (March 16, 2007).

On July 3, 2007, Plaintiff filed an Amended Verified Complaint that provided a more specific breakdown of the Plaintiff's alleged claims. Most notably, the Amended Verified Complaint clarified that the only alleged cargo claim was at Jeddah. This clarification was necessary because the Plaintiff had failed to inform the Court that the Defendant had posted security for the Aqaba cargo claim. In its Amended Verified Complaint (which contained the same ad damnum as the Complaint), the Plaintiff also specified that "upon information and belief, Plaintiff will imminently settle or secure the Jeddah cargo receivers' claim in order to avoid having the Vessel arrested and to mitigate damages." *See Verified Amended Complaint at* ¶ 22. By the Plaintiff's own admission, Plaintiff had yet to post security for these claims. Moreover, at the time the writ of attachment was served on Bunge's account, these claims had not been settled, compromised or paid. Therefore, it is without question that attaching Defendant's property as security for these claims was premature and that the attachment of Defendant's assets on this basis was wrongful. Further, it is well settled in this Court that "the claim of the Plaintiff must be accrued and constitute a valid maritime claim at the time of the Rule B attachment." *Sonito Shipping*, 2007 U.S. Dist. LEXIS at *7.

On July 11, 2007, when confronted by information from Plaintiff's own agent in Jeddah about the value of the cargo claim, Plaintiff conceded that it was grossly over-secured and agreed to reduce the principal amount of cargo claim from $3,045,119.55 to $140,000.00. Later that same day and at the Defendant's request, Plaintiff's counsel represented that only $1,890,879.44 will be held to secure the Plaintiff's hire claim as well as the premature Jeddah cargo claim, and the balance of the attached funds will be released. *See Letter from Nancy R. Peterson to Thomas*

3

*L. Tisdale dated July 11, 2007 annexed to the Davies Aff't. as Exhibit 7.* It deserves repeating that, on July 11, 2007 when plaintiff agreed to reduce the amount of security sought, its cargo claim was still unripe.

On July 18, 2007, Bunge wrote to the Plaintiff advising of its counterclaim for speed, performance and expenses totaling $241,521 exclusive of interest, reasonable attorney's fees and arbitration costs. *See July 18, 2007 Letter from Thomas L. Tisdale to Nancy R. Peterson annexed to the Davies Aff. as Exhibit 8.* Further, Defendant's July 18, 2007, letter demanded that counter-security be posted in the amount of $500,000 to cover its principal counter-claim plus interest, costs and attorneys' fees which are routinely awarded to the prevailing party in proceedings subject to English law.

On July 20, 2007, Plaintiff restrained an additional $553,079.88 of the Defendant's property at Bank of New York without applying for a supplemental ex parte order, or obtaining any supplemental process of maritime attachment. Plaintiff's only justification for this increase is their un-verified assertion that their $160,000 cargo security claim has increased to $376,667. In the same breadth, Owners questioned the validity of Bunge's counter-claim and have continued to refuse to post counter-security for Defendant's modest and reasonable counter-claim.

On July 20, 2007, Bunge sent to the Plaintiff's a revised Hire Statement now that the vessel was redelivered and the accounts updated. In that statement, Defendant claims a principal amount due of $250,753.13, to be paid within 3 days. The Plaintiff has failed to pay the claim or to post counter-security to secure Bunge's meritorious counterclaim. This is especially egregious as the Plaintiff deliberately and prematurely attached more than $5 million dollars of the Defendant's funds when it was not entitled to such an attachment and the amount of security

4

sought was grossly inflated. As such, the Defendant respectfully requests that pursuant to Rule E(7)(a) of the Supplemental Admiralty Rules, that the Court should order the Plaintiff to post counter-security.

## ARGUMENT

A. **THE COURT SHOULD ORDER PLAINTIFF TO POST COUNTERSECURITY**

Rule E(7)(a) of the Supplemental Admiralty Rules provides that:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given ***must*** give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise.

Rule E(7)(a) also provides that:

> The court may, on the filing of the complaint or on the appearance of any defendant, claimant, or any other party, or at any later time, require the plaintiff... to give security, or additional security, in such sum as the court shall direct to pay all costs and expenses that shall be awarded against the party...

*Id.*

The trial court possesses broad discretion in deciding whether to order counter-security. *See Result Shipping Co. v. Ferruzzi Trading USA, Inc.*, 56 F.2d 394, 399 (2d Cir. 1995); *Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F. Supp. 235, 239 (S.D.N.Y. 1996). As stated by the Court in *Finecom Shipping Ltd. v. Multio Trade Enterprises AG*, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. 2005):

> While courts have identified a number of factors to be considered in exercising this discretion, the core purpose of the countersecurity rule is to place the parties on an even footing; if one party is deprived of the use of its property during the litigation but the adverse party is not, despite the pendency of reciprocal claims, the party with the security may have unfair leverage in the action.

5

*Id.* at 82 (citations omitted)(emphasis added); *see also Aifos Trade SA v. Midgulf International Ltd.*, 06 Civ. 203 (SHS) p. 4. In *Result Shipping*, the Second Circuit stated that a court should be guided primarily by two principals in exercising its discretion regarding counter-security. First, courts must consider that the purpose of the Rule is "to place the parties on an equality as regards security." *Id.* at 399-400 *citing Titan Navigation*, 808 F.2d at 403 (*quoting Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 638-39, 68 L. ed. 480, 44 S. Ct. 220 (1924)). This factor mandates the ordering of countersecurity where, as here, a defendant whose property has been attached asserts non-frivolous counter-claims growing out of the same transaction. *Id.*

The second factor cited by the Second Circuit in *Result Shipping*, was that Rule E(7)(a) is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit. *Id. citing Titan Navigation*, 808 F.2d at 403-05; *and Washington-Southern*, 263 U.S. at 632-36 (construing predecessor to Rule E(7) under old Admiralty Rules). As such, the trial court

> is to be guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the intial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection.

*Titan Navigation*, 808 F.2d at 403-05 (listing cases in which countersecurity should not be granted); *see also Afram Lines*, 905 F.2d at 349-50.

In the present case, Bunge has submitted its counterclaim for a sum of $577,949.41. *See Defendant's Answer and Counterclaim at* ¶ 29. These counterclaims will be asserted as such in the London arbitration initiated by the Plaintiff. The counter-claims arise from the same incidents that form the basis of the allegations in Karaki's Verified Amended Complaint. Specifically, Karaki's breach of the charter-party dated February 14, 2007 caused Bunge to

6

suffer damages in the total amount of $577,949.41. Further, these claims are maritime and could form the basis of a separate Supplemental Rule B attachment action. As such, the counter-claims are non-frivolous and a proper basis has been established upon which counter-security under Rule E should be awarded.

The awarding of counter-security will not prejudice Karaki, but merely serve to "level the playing field" for the Defendant. Therefore, Bunge respectfully requests that this Court Order Plaintiff to post counter-security in the amount of $577,949.41, including interest, costs, attorneys' fees and arbitration expenses.

**B.   IN THE ALTERNATIVE, THE ATTACHMENT SHOULD BE VACATED.**

It is well settled that at a Rule E(4)(f) hearing, the Plaintiff "has the burden of showing that the attachment should not be vacated." *Aqua Stoli Shipping v. Gardner Smith Pty. Ltd.*, 409 F.Supp. 2d 316, 318 (S.D.N.Y. 2005)("it is thus clear that the party obtaining the attachment order bears the burden at the subsequent hearing of justifying it").

Furthermore, in the context of a maritime attachment the district court has the discretion to weigh the equities of the parties. *Greenwich Marine, Inc. v. SS Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965); *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. 2005). Under this inherent power, a district court may vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff. *Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal*, 441 F. Supp. 2d 386, 391 (S.D.N.Y. 2006). This discretion is broad and even where the plaintiff has shown that the attachment is facially valid, "the defendant may show that vacatur would still be appropriate in certain limited circumstances." *OGI Oceangate Transp. Co. v. RP Logistics Pvt.Ltd.*, 06 CV 9441, 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 26, 2007).

7

The Plaintiff herein has demonstrated that it is entitled to counter-security for its counter-claim pursuant to Rule E(7). Should the Plaintiff fail to post sufficient counter-security, this Court should vacate this maritime attachment.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court should order the plaintiff to post counter-security in the amount of $577.949.41. In the event that the Plaintiff refuses to post counter-security, the attachment should be vacated.

Dated: July 27, 2007
New York, NY

The Defendant,
BUNGE SA,

By: _____
Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT 5263)
TISDALE LAW OFFICES LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 – phone
(212) 869-0067 – fax
ldavies@tisdale-law.com
ttisdale@tisdale-law.com

8