# EXHIBIT 1

# Inter-Club New York Produce Exchange Agreement (1996)

This Agreement is made on 1 September 1996 between the P&I Clubs being members of The International Group of P&I Associations (hereafter referred to as "the Clubs").

This Agreement replaces the Inter-Club Agreement 1984 in respect of all charterparties specified in Clause (1) hereof and shall continue in force until varied or terminated. Any variation to be effective must be approved in writing by all the Clubs but it is open to any Club to withdraw from the Agreement on giving to all the other Clubs not less than three months' written notice thereof, such withdrawal to take effect at the expiration of that period. After the expiry of such notice, the Agreement shall nevertheless continue as between all the Clubs, other than the Club giving such notice who shall remain bound by and be entitled to the benefit of this Agreement in respect of all cargo claims arising out of charterparties commenced prior to the expiration of such notice.

The Clubs will recommend to their Members without qualification that their Members adopt this Agreement for the purpose of apportioning liability for claims in respect of cargo which arise under, out of or in connection with all charterparties on the New York Produce Exchange Form 1946 or 1993 or Asbatime Form 1981 (or any subsequent amendment of such forms), whether or not this Agreement has been incorporated into such charterparties.

## Scope of application

(1) This Agreement applies to any charterparty which is entered into after the date hereof on the New York Produce Exchange Form 1946 or 1993 or Asbatime Form 1981 (or any subsequent amendment of such forms).

(2) The terms of this Agreement shall apply notwithstanding anything to the contrary in any other provision of the charterparty; in particular the provisions of Clause (6) (time bar) shall apply notwithstanding any provision of the charterparty or rule of law to the contrary.

(3) For the purposes of this Agreement, cargo claim(s) mean claims for loss, damage, shortage (including slackage, ullage or pilferage), overcarriage of or delay to cargo including customs dues or fines in respect of such loss, damage, shortage, overcarriage or delay and include:

(a) any legal costs claimed by the original person making any such claim;

(b) any interest claimed by the original person making any such claim;

(c) all legal, Club correspondents' and experts' costs reasonably incurred in the defence of or in the settlement of the claim made by the original person, but

shall not include any costs of whatsoever nature incurred in making a claim under this Agreement or in seeking an indemnity under the charterparty.

(4) Apportionment under this Agreement shall only be applied to cargo claims where:
(a) the claim was made under a contract of carriage, whatever its form,
(i) which was authorised under the charterparty;
or
(ii) which would have been authorised under the charterparty but for the inclusion in that contract of carriage of Through Transport or Combined Transport provisions, provided that
(iii) in the case of contracts of carriage containing Through Transport or Combined Transport provisions (whether falling within (i) or (ii) above) the loss, damage, shortage, overcarriage or delay occurred after commencement of the loading of the cargo onto the chartered vessel and prior to completion of its discharge from that vessel (the burden of proof being on the Charterer to establish that the loss, damage, shortage, overcarriage or delay did or did not so occur); and

(iv) the contract of carriage (or that part of the transit that comprised carriage on the chartered vessel) incorporated terms no less favourable to the carrier than the Hague or Hague Visby Rules, or, when compulsorily applicable by operation of law to the contract of carriage, the Hamburg Rules or any national law giving effect thereto; and

(b) the cargo responsibility clauses in the charterparty have not been materially amended. A material amendment is one which makes the liability, as between owners and charterers, for cargo claims clear. In particular, it is agreed solely for the purposes of this Agreement:
(i) that the addition of the words "and responsibility" in Clause 8 of the New York Produce Exchange Form 1946 or 1993 or Clause 8 of the Asbatime Form 1981, or any similar amendment of the charterparty making the Master responsible for cargo handling, is not a material amendment; and

(ii) that if the words "cargo claims" are added to the second sentence of Clause 26 of the New York Produce Exchange Form 1946 or 1993 or Clause 25 of the Asbatime Form 1981, apportionment under this Agreement shall not be applied under any circumstances even if the charterparty is made subject to the terms of this Agreement; and

(c) the claim has been properly settled or compromised and paid.
(5) This Agreement applies regardless of legal forum or place of arbitration specified in the charterparty and regardless of any incorporation of the Hague, Hague Visby Rules or Hamburg Rules therein.

Time Bar

(6) Recovery under this Agreement by an Owner or Charterer shall be deemed to be waived and absolutely barred unless written notification of the cargo claim has been given to the other party to the charterparty within 24 months of the date of delivery of the cargo or the date the cargo should have been delivered, save that, where the Hamburg Rules or any national legislation giving effect thereto are compulsorily applicable by operation of law to the contract of carriage or to that part of the transit that comprised carriage on the chartered vessel, the period shall be 36 months. Such notification shall if possible include details of the contract of carriage, the nature of the claim and the amount claimed.

**The apportionment**

(7) The amount of any cargo claim to be apportioned under this Agreement shall be the amount in fact borne by the party to the charterparty seeking apportionment, regardless of whether that claim may be or has been apportioned by application of this Agreement to another charterparty.

(8) Cargo claims shall be apportioned as follows:

(a) Claims in fact arising out of unseaworthiness and/or error or fault in navigation or management of the vessel:
100% Owners
save where the Owner proves that the unseaworthiness was caused by the loading, stowage, lashing, discharge or other handling of the cargo, in which case the claim shall be apportioned under sub-Clause (b).
(b) Claims in fact arising out of the loading, stowage, lashing, discharge, storage or other handling of cargo:
100% Charterers
unless the words "and responsibility" are added in Clause 8 or there is a similar amendment making the Master responsible for cargo handling in which case:
50% Charterers

50% Owners

save where the Charterer proves that the failure properly to load, stow, lash, discharge or handle the cargo was caused by the unseaworthiness of the vessel in which case:
100% Owners
(c) Subject to (a) and (b) above, claims for shortage or overcarriage:
50% Charterers

50% Owners

unless there is clear and irrefutable evidence that the claim arose out of pilferage or act or neglect by one or the other (including their servants or sub-contractors) in which case that party shall then bear 100% of the claim.
(d) All other cargo claims whatsoever (including claims for delay to cargo):
50% Charterers

50% Owners

unless there is clear and irrefutable evidence that the claim arose out of the act or neglect of the one or the other (including their servants or sub-contractors) in which case that party shall then bear 100% of the claim.
**Governing Law**
(9) This Agreement shall be subject to English Law and Jurisdiction, unless it is incorporated into the charterparty (or the settlement of claims in respect of cargo under the charterparty is made subject to this Agreement), in which case it shall be subject to the law and jurisdiction provisions governing the charterparty.