# EXHIBIT 2

# Time Charter

**GOVERNMENT FORM**

Approved by the New York Produce Exchange

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  **This Charter Party**, made and concluded in *London*............................................ *14th.* day of *February, 2007* ............ *19* .....

2  Between *KIRAKI NAVIGATION S.A. NEVIS*,

3  Owners of the good ~~Panama~~ flag ................... *Steamship/*Motorship *"SVYATAYA YEKATERINA"* ................................ of ......................................

4  of ........................ tons gross register, and ............................ tons net register, having engines of ........................ indicated horse power

5  and with hull, machinery and equipment in a thoroughly efficient state, and classed *R.S.* .........................

6  ~~of~~ ~~about~~ ........................... ~~cubic feet bale capacity and about~~ .......................................................... ~~tons of 2240 lbs.~~

7  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding *and constant as per the Description Clause* ~~one and~~

8  ~~one-half percent of ship's deadweight capacity.~~

9  allowing a minimum of fifty tons) on a draft of ........................ *feet 12.59 metres* inches on *salt water* Summer freeboard, inclusive of permanent bunkers,

10  which are of the capacity of about .......................................................... tons of fuel, and capable of steaming, fully laden, under good weather

11  conditions about ........ knots on a consumption of about ..... tons of ~~best Welsh coal~~ *best-grade fuel oil "IFSO RMG 35]" - best-grade Marine Diesel oil,*

12  *"[ISO DMB]" tons (See Clause 29)* .....................................................................................................................................

13  now ~~discharging~~ ~~ports from Israel to Brazil~~ ........... and *BUNGE S.A.* ....................................... Charterers of the City of *Geneva*. ...........

14  **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

15  ~~about~~ *one time charter trip via South Brazil or Plate with grain/grain products or sugar via safe port(s), safe berth(s), safe anchorage(s),*

16  *always afloat, always within Institute Warranty Limits, except Charterers option to breach Institute Warranty Limits in St. Lawrence,*

17  *NAABSA in East Coast South America as per NYPE Clause 6 for duration about 55 - 60 days without guarantee* within below mentioned

18  *trading limits.*

19  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

20  the fulfillment of this Charter Party.

21  Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot ARATU any time day or night Sundays and*

22  *holidays included* .......................................... ................................................................................................................

23  ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~

24  ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on her delivery to be

25  ready to receive cargo with clean dry cargo spaces *to Charterers Surveyors satisfaction - (See also Clause 94)* sweet holds and light, staunch,

26  strong and in every way fitted for the service, having water ballast, winches and

27  donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

28  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchant-

29  dise, including petroleum or its products, in proper containers, excluding *(See Clause 30)* ............................................................................

30  ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk~~

Case 1:07-cv-06161-NRB   Document 12-3   Filed 07/31/2007   Page 3 of 19

Case 1:07-cv-06161-NRB · Document 12-3   Filed 07/31/2007   Page 3 of 19

31  October· 31st· and· May· 16th, Hudson Bay ___ , all unsafe ports; also excluding· when· out· of· season, · · · ·Ro· Sea· Black· Sea· and· the· Baltic,

32  *Trading Exclusions: (see Clause 41)* _____

33

34  as the Charterers or their Agents shall direct, on the following conditions:

35

36    1.  That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; *fines by authorities*

37  *on crew and/or vessel unless owing to the default of Charterers – See Clause 81,* shall pay for the

38  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

      the vessel, in a thoroughly efficient state in hull, *cargo spaces,* machinery and equipment, *her class, gear for provision, crew and trading*

      *certificates valid, Vessel to have all other certificates necessary to comply with current requirements as per vessel's class/requirements –*

      (*See Clause 29)* for and during the service.

39    2.  That whilst on hire the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *Customary Pilotages,*

40  Agents, Commissions,

41  Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

42  a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

      illness of the crew or *cargoes carried prior to delivery* to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while

43  vessel is employed under this

44  charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

45  of six months or more.

      Charterers are to provide necessary dunnage *lashing materials and shifting boards* and also any extra fittings requisite for a special trade or unusual

46  cargo, but

47  Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

48  for damage, they making good any damage thereto.

49    3.  That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on

50  board the vessel at the current prices in the respective ports; the vessel to be delivered with not less than _____ tons and not more than _____

51  _____ tons and to be re-delivered with not less than _____ tons and not more than _____ tons. *(See Clause 34)*

52    4.  That the Charterers shall pay for the use and hire of the said Vessel at the rate of U.S. *$27,500 (Twenty Seven Thousand Five Hundred* _____

      *Dollars) daily including overtime payable every 15 days in advance in United States Currency per ton on vessel's total deadweight carrying*

      *capacity, including bunkers and* _____

53  stores, on _____ summer freeboard, per Calendar Month, commencing on and from the day of her delivery, as aforesaid, and at

54  and after the same rate for any part of a month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55  wear and tear excepted, to the Owners (unless lost) *on dropping last outward sea pilot one safe port RED SEA including ADEN (intention*

      *AQABA) or in Charterers option PERSIAN GULF (if Persian Gulf redelivery passing Muscat outbound) any time day or night Sundays*

56  *and holidays included* _____ unless otherwise mutually agreed. Charterers are to give Owners not less than *15/10 days approximate*

57  notice of vessel's expected date of re-delivery, and *probable port country*, *and 3/2/1 days definite notice.*

58    5.  Payment of said hire to be made in New York, in cash in United States Currency, *every 15 days semi-monthly* in advance, and for the last *15*

      *days half-month or*

59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60  due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61  hire, or bank guarantee, or any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from 7 a.m. on the working day

63  following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they

64  to have the privilege of using vessel at once, such time used to count as hire. *(See Clause 45)*

65    Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66  to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67  of such advances.

68
69
70
71  6. That the cargo or cargoes be la.     and/or discharged in any dock or at any wharf or pla...    .at Charterers or their Agents may direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely lie aground.

71  7. That the whole reach of the Vessel's Hold, Deeks *no deck cargo allowed*, and usual places of loading (not more than she can reasonably stow and carry), also

72  accommodations for Supercargo *if available*, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's Officers, crew,

73  tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far is accommodations allow.~~ Charterers

74  ~~paying Owners~~ ~~per day per passenger for accommodation and meals. However, it is agreed that in case any fares or extra expenses are~~

75  ~~incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.~~

76  8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78  agency; and Charterers are to load, stow, and trim, *tally, lash, unlash and discharge* the cargo at their expense under the supervision of the

79  Captain, who is to sign *or authorize the Charterers or their agents to sign on his behalf the* Bills of Lading for

80  cargo as presented, in conformity with Mate's *or* and Tally Clerk's receipts.

80  9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments. *In case Charterers demand the*

82  *change, Charterers to provide substantiated evidence of Master's fault.*

82  10. That the Charterers shall have permission to appoint a Supercargo, *who is to sign the usual Letter of Indemnity for passengers,* who shall

83  accompany the vessel and see that voyages are prosecuted

83  with the utmost despatch. He is to be furnished with free accommodation, *provided available*, and same fare as provided for Captain's table, Charterers paying at the

84  rate of *$10.00* ~~+.00~~ per day, Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85  Clerks, Stevedores Foreman, etc., Charterers paying at the current rate per meal *or U.S. $5.00* for all such victualling.

86  11. That the Charterers shall furnish the Captain from time to time with all requisite instruction and sailing directions, in writing *In English*, and the

87  Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88  terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89  sumption of fuel. *Master to adhere strictly to Charterers instructions giving ETA's and required NOR's.*

90  12. That the Captain shall use diligence in caring for the ventilation of the cargo. *Vessel has natural ventilation only.*

91
92  13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~

93  ~~on giving written notice thereof to the Owners or their Agents~~     ~~days previous to the expiration of the first named term, or any declared option~~

94  14. That if required by Charterers, time not to commence before *10th March, 2007* ...................................... and should vessel

95  not have given written notice of readiness on or before *20th March, 2007* ............ but not later than *12:00 hours local time* 4 p.m. Charterers or

96  their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *(See Clause 35)*

97  15. That in the event of the loss of time from deficiency *and/or default and/or strike* of stores, fire, breakdown or damages to hull, machinery or equipment,

98  grounding, detention by average accidents to ship or cargo *unless resulting from inherent vice,* drydocking for the purpose of examination or painting bottom, *pollution* or by any other cause *whatsoever which is due to Owners/Vessels fault*

99  preventing the full working of the vessel, *unless all above are caused by Charterers/Charterers servants/employees,* the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by *reasons other than adverse weather conditions and currents*

100  defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101  thereof and all *proven directly related* extra expenses shall be deducted from the hire.

102  16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103  returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104 Rivers, Machinery, Boilers and Steam Naviga., , and errors of Navigation throughout this Charter Party, always ... mutly excepted.
105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the
106 purpose of saving life and property.
107 17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to *arbitration in London* three
persons at New York,
108 one to be appointed by each of the parties hereto, and the third by the two so chosen, their *arbitrators* decision or that of any two of them, shall be final,
and for
109 the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men. *(See Clause 55)*.
110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights, *sub-hires* for any amounts due under this Charter, including General
Ave-
111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113 might have priority over the title and interest of the owners in the vessel. *(See Clause 52)*
114 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115 Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of
116 York-Antwerp Rules *1974 1994*, at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these
117 Rules, according to the laws and usages at the port of *London in case the sub-charter and/or Bills of Lading New York*. In such adjustment
disbursements in foreign currencies shall be exchanged into
118 United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at
119 the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or
120 bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier
121 or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if
122 required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the
123 carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the
124 place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in
125 United States money. *Hire not to contribute to General Average.*
126 In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,
127 whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the
128 goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,
129 losses, or expense of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the
130 goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or
131 ships belonged to strangers.
132 20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the
133 cost of replacing same, to be allowed by Owners.
134 Provision as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.
135 21. That as the vessel may be, from time to time, employed in tropical waters during the term of this Charter, Vessel is to be docked at a
136 convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from
137 time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.
138 ....................................................................................................................................................................
139 ....................................................................................................................................................................
140 22. Owners shall maintain the gear *equipment* of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons *their*
141 *maximum capacity in accordance with the Description Clause*, also
providing *and maintaining runners*, ropes, falls, slings *as on board* and blocks. If vessel is fitted with derrick capable of handling heavier lifts,
Owners are to provide necessary gear for
142 same, otherwise equipment and gear for the heavier lifts shall be for Charterers' account. Owners also to provide *and maintain sufficient lights on deck*
*and in cargo spaces* on the vessel, lanterns and oil for
143 night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The
144 Charterers to have the use of any gear on board the vessel.

145  23. Vessel to work night and, day, if ... uired by Charterers, and all *equipments* winches to be at ... atters' disposal during loading and discharging;

146  ~~absence to provide one winchman per hatch to work winches day and night as required, Charterers agreeing to pay officers, engineers, winchmen,~~
147  ~~deck hands and donkeyman for overtime work done in accordance with the working hours and rates dated in the ship's articles. If this rules of the~~
148  ~~port, or labor unions prevent crew from driving winches, shore Winchmen to be *employed/paid* by Charterers. In the event of a disabled winch or~~ ~~winches, or~~

149  ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
150  ~~thereby.~~

151  ~~24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~
152  ~~in the "Act of Congress of the United States approved on the 13th day of February, 1893," and entitled "An Act relating to Navigation of Vessels,"~~
153  ~~etc., in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both~~
154  ~~of which are to be included in all bills of lading issued hereunder:~~

155  ~~U. S. A. Clause Paramount~~

156  ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~
157  ~~16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
158  ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
159  ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160  ~~Both to Blame Collision Clause~~

161  ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
162  ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
163  ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or~~
164  ~~liability represents loss of or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165  ~~carrying ship or her owners to the owners of said goods and set off recouped or recovered by the other or non-carrying ship or her~~
166  ~~owners as part of their claim against the carrying ship or carrier.~~

167  25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
168  drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169  part or to get out after having completed loading or discharging. *Charterers to have the right of sending the vessel to ports or waters which are open to navigation for non-ice strengthened vessels but vessel not to force ice and not to follow ice breaker.*

170  26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171  navigation of the vessel, acts of pilots and tugboats, insurance, crew, and all other matters, same as when trading for their own account.

172  27. A commission of ~~1.25~~ 2 1/2 per cent is payable by the Vessel and Owners to

173  *Simpson, Spence & Young Ltd., London.* ..........................................................................................................................

174  on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

     28. An address commission of ~~3.75~~ 2 1/2 per cent payable to *Charterers* ...................................................... on the hire earned and paid under this Charter.

175  *Clauses 29 to 97 inclusive as attached hereto, are deemed to be fully incorporated in this Charter Party.*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A.), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.



CHARTER PARTY DATED 14TH FEBRUARY, 2007.

Clause 29     Vessel's Description

MV SVYATAYA YEKATERINA, EX NAMES: ELENI M, RUDDY, NEW WAVE, KHARITON GREKU

TYPE: GEARLESS SELFTRIMMING BULK CARRIER, ENG/BRIDGE AFT

CLASS: RUSSIAN MARITIME REGISTER OF SHIPPING KM * L3 BULK CARRIER (ESP)

IMO NUMBER: 8134962; OFFICIAL NO: 30580-05

YARD AND YEAR BUILT: NIKOLAEV OKEAN YARD, UKRAINE, DECEMBER 1982

DWAT 52,450 mts ON 12.300 M TPC - 57.4 t fully laden  FWA 287 MM

FLAG - PANAMA,  HOMEPORT: PANAMA, OWNERS: KARAKI NAVIGATION S.A. NEVIS

GRT/NRT          31,661.00/17,558.00 - INTERNATIONAL

                 31,551.22/25,478.45 - SUEZ

                 32,401.00/24,656.00 - PANAMA

LOA: 215.39 M, LBP: 201.60 M, BEAM: 31.80 M DEPTH MOULDED : 16.95 M

SPEED AND CONSUMPTION - abt 11.5 knots ON abt 27.0 MT ifo 180 CST (RME

25) and abt 3.0 MT mgo. IN PORT PER 24 HOURS: ABT 3 MT MGO

NUMBER AND SIZES OF HATCHES 1 - 12.8 m X 13.6 m  2-8 - 12.8 m x 17.0 m

TYPE OF HATCH COVERS:  hold nr.1 - hydraulic double folding board-fore, hold nr.2-8 - hydraulic double folding cross hatch

covers (TO THE SIDES)

CBFT.    GRAIN / BALE - data not available

HOLD 1 - 246 143

HOLD 2 - 263 800

HOLD 3 - 248 615

HOLD 4 - 289 227

HOLD 5 - 230 958

HOLD 6 - 275 101

HOLD 7 - 272 276

HOLD 8 - 298 583

TOTAL -  2 121 703 CUBF

MAXIMUM UNIFORM LOAD ON TANKTOP (MT/M2):

HOLD 1 - 21

HOLD 2 - 44

HOLD 3 - 21

HOLD 4 - 21

HOLD 5 - 35

HOLD 6 - 21

HOLD 7 - 44

HOLD 8 - 21

ALL DETAILS "ABOUT" "W.O.G." EAOAE

OWS GTEE THAT VSL IS AND WILL REMAIN FOR THE WHOLE DURATION OF THIS CP CLASSED HIGHEST LLOYDS
OR EQUIV

OWS GTEE THAT VSL IS AND WILL REMAIN FOR THE WHOLE DURATION OF THIS CP FULLY P+I COVERED

OWS GTEE THAT VSL IS AND WILL REMAIN FOR THE WHOLE DURATION OF THIS CP FULLY H+M INSURED

OWS GTEE VSL FULLY ISM COMPLIANT - BIMCO STANDARD ISM CL TO APPLY

OWS GTEE VSL IS ST BC SUITABLE FOR GRAB DISCH

OWS TO COMPLETE BUNGE QUESTIONNAIRE

**Clause 30    Cargo Exclusions**
All cargoes excluded except Grain/Grain Products, agri products, always excluding sunseed expellers, oil and seed cakes expellers.

**Clause 31    Double Banking**
Bimco Double Banking Clause to apply.

**Clause 32    Panama / Suez Canals transit, Grain Loading, A.H. Ladder Fitting**
Vessel to be fully fitted and certificated for the transit of Panama and Suez Canals. Vessel also to be fully grain fitted able to load a full cargo of grain in accordance with Solas 69 or 74 and amendment of 78. Vessel is also fitted with Australian Hold Ladders. Vessel to be off-hire for any period of time lost owing to Owners' failure to comply with this Clause and all relevant expenses and losses to be for Owners' account.

**Clause 33    Flag / Boycott**
In case vessel is blacklisted and/or boycotted and/or delayed and/or restricted in the use of any port, loading or discharging facilities, labour, tugs, or pilotage assistance, owing to vessel's ownership, flag, crew, crew employment, or crew wages, hire shall cease for any period of time lost thereby and all relevant expenses and losses to be for Owners' account.

**Clause 34    Arrest**
If the vessel is arrested during the currency of this Charter by any authority or at the suit of any person having or purporting to have a claim against the vessel, hire shall cease for the period during which the vessel remains under arrest or unemployed as a result of such arrest and the Owners shall reimburse Charterers for any costs incurred thereby. This Clause does not apply for claims against the Owners and/or their agents for which Charterers are liable.

**Clause 35    Delivery Notice**
Notice on fixing and subsequent daily notices to: frtex@t:bunge.com Telex: 149173, Fax: +41 21 5929 101.

**Clause 36    Crew Services**
The hire under this Charter Party shall be deemed to include the following crew services:

a.    Providing local regulations permit, all opening and closing of hatches for loading, discharging or ventilating the cargo. Such opening and closing of hatches to be performed timely and efficiently.

b.    Deleted

c.    All necessary cargo control during loading and discharging including supervision of stowage and putting necessary remarks on Master's receipts, time sheets and reports.

**Clause 37    Deviation**
If the vessel puts back or deviates on a voyage by reason of any accident, to land sick or injured seaman, to receive or to offer salvage services, to carry out works pursuant to the quality warranty or any other provision of the shipbuilding contract, to carry out maintenance work or repairs or to undergo drydocking or Classification Society surveys, the hire shall cease from the time the vessel puts back or deviates until she is again at the same or equivalent position or at Charterers' option in another position which will not be further away than the position wherefrom the vessel originally put back or deviated, and the voyage resumed therefrom.

**Clause 38    Insurance**
Owners guarantee that vessel will be covered on full terms and for her full value of US$ 10 million for Hull and Machinery insurance and will remain so for the whole duration of this Charter. Owners have the option to alter the value of their Hull and Machinery insurance informing Charterers immediately of the change. Charterers to have the benefit of any return insurance premium receivable by Owners from Underwriters by reason of the vessel being in port for a minimum period of 30 days provided vessel is on-hire. Furthermore, the vessel will also be entered in a first-class P. and I. Association (member of the International Group) on full terms for the duration of this Charter. Charterers to have the benefit of the Owners' P. and I. Club cover as far as the rules permit.

The vessel will also be covered by a first-class war risk insurance Association for the whole duration of this Charter. The basis war risk insurance premium shall be for Owners' account and additional premium and crew war bonus shall be for Charterers' account. Valuation for the purpose of estimating such additional premium is as follows:

Hull and Machinery: US$ 11,500,000.

Furthermore the vessel to be fully covered against pollution by oil.

#### Clause 39     Oil Pollution

Owners are required to establish and maintain financial security for responsibility in respect of oil or other pollution damage as required by any government including federal state or municipal or other division or authority thereof, to enable the vessel, without penalty or charge lawfully to enter, remain at or leave any port, place, territorial or contiguous waters of any country, states or municipality in performance of this Charter without any delay.

This obligation shall apply whether or not such requirements have been lawfully imposed by such government or division or authority thereof, Owners shall make and maintain all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Owners' sole expense and Owners shall indemnify Charterers against all consequences (including loss of time) and all expenses and costs of any failure or inability to do so.

#### Clause 40

Deleted.

#### Clause 41     Trading Exclusions

Iraq ,Lebanon ,Syria ,Georgia (Including Abkhazia), Finland ,Sweden, Norway, Yugoslavia And Former Yugoslavia Rep, Albania, Haiti, Nicaragua, Cambodia, Yemen, Bangladesh, Angola, Nigeria, North Korea, Sri Lanka, Angola, Turkish Occupied Cyprus, Great Lakes, Nigeria, Cameroon, Guinea Bissau, Namibia, Liberia, Sierra Leone, Eritrea, Somalia, Ethiopia, Orinoco, Amazon River Ports, Israel, Sea Of Azov, Cuba, Russian / CIS Pacific, North Korea, Australia, New Zealand, Algeria, war and warlike zones, and other countries having hostilities with the country of the vessels flag and places which may be excluded by the country of the vessels flag and / or banned by United Nations / USA / International Organizations.

Extra war risk insurance premium and crew war bonus if any to be for Charterers account.

No direct calls are permitted between Taiwan and P.R.C and vice versa.

Charterers to pay on receipt of invoice the additional premium on Hull and Machinery payable by Owners to their war risk Underwriters by virtue of vessel's trading in war risk areas, as defined by the London War Risk Committee, where additional premium is levied, less rebates. Charterers also paying additional war risk bonus to Officers and crew, if applicable.

Charterers not to trade CIS Pacific.

Yemen allowed under following conditions:

In case of discharge full or part cargo in Algerian ports, all cargo claims shall be defended and settled by the Charterers and their P & I Club (please insert name of Charterers P & I) without involvement or participation of the Owners and/or their P & I Club:

If during the course of the Charter Party the Arab league confirm they no longer blacklist the vessel from trading to Israel, then Owners to allow Charterers to delete Israel from the trading exclusion.

Charterers have the option of trading outside Institute Warranty Limits in Baltic Sea and East Coast Canada.

#### Clause 42     Self-trimming, shape of holds, grab discharge

Vessel is a self-trimming bulker and vessel's holds are clear and unobstructed with no centre-line bulkheads sheathings or battens or exposed framings below top of slope plate and any of the holds. Owners guarantee vessel is suitable for grab discharge and for the use of bulldozers in relation to vessel's tank strength and vessel's characteristics.

RIDER CLAUSES TO MV. "SVYATATA" [illegible]
CHARTER PARTY DATED 14TH FEBRUARY, 2007.

**Clause 43        Stevedore Damages**
Charterers not to be responsible for any damage sustained by vessels loading and discharging unless such damages are notified to Charterers representatives or agents by the Captain at the time they occur, or as soon as conveniently possible thereafter, but before sailing from the port damages occurred. Master to endeavour to obtain written acknowledgement of the damage from stevedores.

In case of hidden damage Master to notify Charterers as soon as same discovered. Charterers to be responsible for repairing the damages before vessel's redelivery. Any damage affecting vessels seaworthiness or class or vessel's working capacity to be repaired immediately by Charterers at their time and expense before vessel's sailing from the ports where damages occurred. Vessel always to remain on hire.

**Clause 44        Deduction of Owners' Account**
The Charterers shall be entitled to deduct from hire payment any disbursements for Owners' account, supported by vouchers, or estimated amounts of disbursements or any advances to the Master including commission thereon, any previous overpayments of hire and any other proven expenses for Owners' account. The Charterers shall be also entitled to deduct from payments estimated costs of bunkers on redelivery.

**Clause 45        Grace Period for Hire Payment**
Where there is failure to make "punctual and regular payment" of hire the Charterers shall be given by the Owners three clear banking days (as recognised at the agreed place of payment) written notice to rectify the failure, and when so rectified within those three days following Owners' notice, the payment shall stand as regular and punctual.

**Clause 46        Sale of the Ship**
Owners do not have the right to sell the ship or change her flag during the currency of this Charter without obtaining Charterers' prior written agreement.

**Clause 47        Hold Condition on Redelivery**
The vessel's cargo holds on redelivery, fair wear and tear excepted, to be about the same condition as on delivery. But Charterers shall have the option of redelivering the vessel with the cargo holds as left by stevedores against which Charterers to pay Owners U.S.$ 4,500 in lumpsum in lieu of hold cleaning excluding dunnage removal which to be at Charterers time and expense.

**Clause 48        Paramount Clause**
New Jason Clause, New Both-to-Blame Collision Clause, Chamber of Shipping Bimco Conwartime 2004 and Clause Paramount as attached to apply to this Charter and to be inserted in any Bill of Lading issued hereunder, if so required by Charterers or their sub-Charterers. No through, transhipment, combined transport liner, way bills to be issued under this Charter Party.

**Clause 49        Bimco Fuel Sulphur Content Clause**
Notwithstanding anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the vessel, at all times, to meet the maximum sulphur content requirements of any emission control zone when the vessel is trading within that zone. The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers failure to comply with this Clause. For the purpose of this Clause, emission control zone shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

**Clause 50**
Deleted.

**Clause 51        On / Off-Hire Survey**
A joint on-hire bunkers survey to be performed at delivery port in Charterers' time and a joint off-hire survey to be performed at redelivery port in owners' time. Each party to employ and pay for its own surveyor. Owners to have the right to appoint master or chief engineer to act as surveyor on owners' behalf. Whenever requested owners to allow Charterers to ascertain quantities of bunkers remaining on board at Charterers time and cost.

**Clause 52**
Deleted.

RIDER CLAUSES TO M.V. "SVYATAYA YEKATERINA"
CHARTER PARTY DATED 14TH FEBRUARY, 2007.

**Clause 53    Hire Payment**
BANK: ROYAL BANK OF SCOTLAND PLC
SHIPPING BUSINESS CENTRE
5-10 GREAT TOWER STREET
LONDON EC3P 3HX
SHIPPING BUSINESS CENTRE
5-10 GREAT TOWER STREET
LONDON EC3P 3HX
BENEFICIARY            : OCEAN AGENCIES LIMITED CLIENT
ACCOUNT
USD ACCOUNT NO     : OCAGCL-USDC
USD IBAN NO.         : GB13 RBOS 1663 0000 3843 92
IBAN BIC / SWIFT      : RBOS GB 2L
REF YEKATERINA/BUNGE

VIA CORRESPONDENT BANK:
American Express Bank Limited, New York,
Account No. 000261123
Swift Code. AEIBUS33
Chips ABA . 0159
Fed Wire . 1240-7188-9

First 15 days hire plus bunkers on delivery value to be paid within three banking days after vessel's delivery. Charterers are entitled to deduct from last sufficient hire payments of Owners estimated disbursements if Owners fail to nominate their protective agent but maximum US$ 1,000 per port of call as well as the value of estimated quantity of bunkers on redelivery.

**Clause 54    Bunkers**
Bunkers on delivery about 540 metric tons IFO and about 190 metric tons MDO. Bunkers on redelivery about same as on delivery.

Prices both ends U.S.$320.00 per metric ton IFO and U.S.$620.00 per metric ton MDO.

Value of bunkers remaining on board on redelivery to be paid together with 1st hire payment. Charterers have the right to deduct the value of estimated bunkers n redelivery from last sufficient hire payment.

Owners to have the right to bunker the vessel for their own account prior vessel's redelivery during the period of this time charter provided they are not interfering with Charterers operations.

**Clause 55    Arbitration**
All disputes arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London. General Average in London, English Law to apply.
Unless the parties agree upon a sole arbitrator, the reference shall be for a tribunal of two arbitrators, one to be appointed by each of the parties, who will have the power to appoint an Umpire if they disagree. The arbitrators and Umpire shall be members of the London Maritime Arbitrators Association or otherwise qualified by experience to deal with commercial shipping disputes.
The contract is governed by English law and there shall apply to arbitration proceedings under this Clause the terms of the London Maritime Arbitrators Association current at the time when the arbitration proceedings are commenced. London Maritime Arbitrators Association small claims arbitration procedure to apply to disputes not exceeding U.S.$ 50,000.00 (Fifty Thousand Dollars)

**Clause 56    NAABSA**
The vessel shall be loaded and discharged in any dock or at any berth or place that Charterers or their agents may direct, provided the vessel can safely lie always afloat at any time of tide, except at such places it is customary for similar size vessels to safely lie aground. Such ports / places to be limited to Argentina including River Plate, Uruguay, Brazil excluding Amazon River.

**Clause 57**
Deleted.

RIDER CLAUSES TO M/V SYYATATA GERASIMOV
CHARTER PARTY DATED 14TH FEBRUARY, 2007.

Clause 58    Employment between Safe Ports
Charterers shall exercise due diligence to ensure that the vessel is only employed between and at safe ports but not withstanding anything contained in this or any other Clause of this Charter. Charterers shall not be deemed to warrant the safety of any port and shall be under no liability in respect thereof except for loss or damage caused by their failure to exercise due diligence as aforesaid.

Clause 59    Final Voyage
Deleted.

Clause 60    Israel Call and Arab Blacklist
The Owners guarantee that no other vessel owned, managed and controlled by them has ever traded to an Israeli port and will not call at any such port prior to or during the Charter. The Owners also guarantee that neither the vessel nor any other vessel owned, managed and controlled by them is blacklisted by an Arab country.

Clause 61    I.T.F.
Vessel's crew is covered by International Seamen and Mutual Labour Association of Phillippines (collective bargaining agreement) accepted by ITF. Loss of time as a result of non-compliance shall be considered as off-hire and any expenses incurred shall be for Owners' account. Furthermore, Owners warrant that throughout the duration of this Charter, the vessel's flag and crewing arrangements shall not interfere with or restrict the vessel's trading restrictions or employment, except causes beyond the control of Owners.

Clause 62    Weather Bureau
The Charterers may supply an independent Weather Bureau ("Oceanroutes" or other similar international standard, the latter to be mutually agreed) advice to the Master during voyages specified by the Charterers.
Evidence of weather conditions shall be taken from the vessel's deck logs and independent weather bureau reports. In the event of a consistent discrepancy between the deck logs and the independent weather bureau reports, the independent weather bureau findings shall be taken as ruling unless there is a strong evidence to the opposite.

Clause 63    Adjustment of Off-Hire Period
Should the vessel be placed off-hire during the currency of the Charter for any reason whatsoever, the Charterers have the option of adding all or any part of such off-hire period to the original period by giving notice to the Owners at least 75 days before the expiration of the original period. This shall not affect the Charterers' obligation to give redelivery notice of the vessel. The Charterers are in any event required to give redelivery notice as per Clause 4.

Clause 64    Cancelling by War
If major war breaks out between any two or more of the following countries: United Kingdom, U.S.A., Russia, People's Republic of China, Japan, directly affecting the performance of the Charter, both the Owners and the Charterers shall have the option of cancelling this Charter with mutual agreement whereupon the Charterers shall redeliver the vessel to the Owners in accordance with Clause 4, if she has cargo on board, after discharging thereof at destination or, if debarred from reaching or entering it, at a near open and safe port as directed by the Charterers, or if she has no cargo on board at a port at which she stays or if at sea at a near safe port as directed by the Owners. In all cases hire shall be paid until the vessel's redelivery.

Clause 65
Deleted

Clause 66    Deratting Certificate
The vessel shall be delivered with valid deratting or deratting exemption certificate, if such certificate does not cover the whole period of this Charter. costs of renewal of certificate and fumigation if necessary shall be for Owners' account. Any detention and extra expenses incurred thereby shall be also for the Owners' account.

Clause 67    Quarantine
Normal quarantine time and expenses for the vessel entering port shall be for Charterers' account but any time of detention and expenses for quarantine due to pestilence, illness, etc., of Master, Officer and crew shall be for Owners' account. Any detention due to ports called or cargoes carried to be for Charterers' account.

RIDER CLAUSES TO M.V. "SVEATA" CHARTER PARTY DATED 14TH FEBRUARY, 2007.

**Clause 68        Possession of Necessary Certificates**
The vessel shall be in possession of necessary certificates to comply with safety and health regulations and all current requirements at all ports of call during this Charter. The Master, Officers and crew of the vessel shall hold vaccination certificates against yellow fever, cholera, etc.

**Clause 69        Loading Holds**
The Owners guarantee that the vessel is a self-trimming bulker. The vessel shall have the latest grain loading certificates in compliance with IMO regulations on board. The vessel is also to load full or part cargoes and to shift between ports and berths with empty (holds 2/4 can be empty as per alternative hold loading shipbuilder's specifications) and/or slack holds subject to Master's approval which should fully comply with SOLAS regulations and port regulations for stability of the vessel, and always within vessel's loading manual constraints related to stability and stresses.

**Clause 70        Equipment and Certificates**
The vessel's equipment shall comply with regulations and/or requirements in effect at port or ports of call and canals and countries in which the vessel will be employed. The Owners also guarantee that the vessel shall be at all times in possession of valid and up-to-date certificates on board to comply with such regulations and/or requirements.

A particular reference is made to the U.S. Department of Labour and Safety and Health Regulations set forth in Part III Code of the Federal Regulations and all Australian Navigation (Loading and Unloading Safety Measures) Regulations, 1981 or any amendments thereto and related regulations and recommendations.

If stevedores, longshoremen or other labours are not permitted to work by reason of any failure of the Master, the Owners and/or their agents to comply with such regulations or by reason that the vessel is not in possession of such valid up-to-date certificates, then the Owners shall make immediate corrective measures and the Owners to be liable for any direct additional costs incurred thereby.

**Clause 71**
Deleted.

**Clause 72        Agency**
The agents appointed by the Charterers shall perform all normal services to the vessel and Master at a fee as per agency tariff but in cases when replacement of crew or repair or other major Owners' matters are required then Owners to appoint their own agents. But in case Owners are unable to arrange the same, Charterers shall agree to have their agents attend such matters with Owners paying agency fee according to Charterers' tariff with their agents, provided Charterers' agents agree to do so.
No agency fee to be charged by the agents for bringing the crew mail to the vessel.

**Clause 73        Eligibility for Bunkering**
The Owners guarantee that the vessel is eligible for bunkers in the United States of America and in any other country.

**Clause 74        Replenishment of Bunkers**
Replenishment of bunkers is arranged and paid for by the Charterers. The Master shall pay due diligence for replenishment of bunkers so as not to cause oil spillage while bunkering.

**Clause 75        Capture of the Vessel, etc.**
Should the vessel be captured or seized or detained or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release, and any extra expenses incurred by and/or during the above capture or seizure or detention or arrest but limited to all the expenses related to the release of the vessel (legal / agency / fees, travelling expenses, etc.) shall be for Owners' account, unless such capture or seizure or detention or arrest is occasioned by any personal act or omission or default of the Charterers or their agents or by reason of cargo or calling port or trading under this Charter.

**Clause 76        Smuggling**
Any delay, expenses and/or fines incurred on account of smuggling shall be for Owners' account if caused by the Officers and/or crew, or shall be for Charterers' account if caused by the Charterers' supercargo and/or their staff or agents.

RIDER CLAUSES TO M/V "XATATA" PER CHARTER
CHARTER PARTY DATED 14TH FEBRUARY, 2007.

Clause 77    Additional Equipment and Fittings
The Charterers, subject to the Owners and/or Master's prior consent shall be at liberty to fit / weld any additional equipment and fittings for loading, discharging and/or securing cargo. Such work shall be done at the Charterers' expense and time and the Charterers shall remove such equipment and fittings at their expense and time prior to redelivery if so required by the Owners.

Clause 78    Communication and Entertainment Fees
Charterers to pay U.S. $1,250 per month/pro rata for cabling/victualling and entertainment.

Clause 79    Using Diesel Oil
The vessel burns MDO while manoeuvering in restricted waters/canals and ports.

Clause 80    Cargo Claim
Liability for cargo claim shall be borne by the Owners and the Charterers in accordance with the Inter Club New York Produce Agreement of February, 1970 and its amendments on May, 1972 and May, 1984 or any future amendments thereof.

Clause 81
Deleted.

Clause 82    Slow Steaming
The Charterers to have the privilege of slow steaming the vessel at a speed acceptable to the vessel and machinery and hull.

Clause 83    Grab Discharge
The Owners guarantee that the vessel is suitable for grab discharge as per vessels tank top strength and characteristics.

Clause 84    Charterers' Inspection
The Charterers and/or their supercargo shall be allowed to inspect engine room and bridge with the consent of the Master which shall not be unreasonably withheld without interference of vessel's operation.

Clause 85    Weather Conditions
The words "good weather conditions" in Line 19 of this Charter Party shall mean any weather condition in which the wind force sea condition does not exceed force 4 at the Beaufort Scale.

Clause 86    Cargo Release by L/G
In the event that the original Bill(s) of Lading are not available on vessel's arrival at discharging port(s) or should the vessel be instructed to discharge at port(s) other than that stipulated in the Bill(s) of Lading then Charterers to provide Owners with a Letter of Indemnity according to the Owners' P. and I. Club wording without bank guarantee, whereafter the Owners will instruct Master to release cargo without presentation of original Bill(s) of Lading and/or to discharge at the port nominated by the Charterers. Letter of Indemnity for clean on board and for predating Bill(s) of Lading, etc., to be agreed case by case.

Clause 87    Pollution Claim
Charterers not to be responsible for any claim brought against the vessel and her Owners and/or her cargo for any pollution damage.

Clause 88
Deleted

Clause 89    Watchmen
Watchmen for cargo to be for Charterers' account. Owners to provide gangway watchman from the crew. Compulsory watchmen to be paid by Charterers. The cost of security antiterrorist guard in USA ports to be for Charterers account, vessel remaining on-hire and to be paid directly by Charterers to the security antiterrorist guard or to the relevant USA authorities as the case may be.

Clause 90    Taxes / Dues
All taxes and/or dues imposed on cargo or freight to be for Charterers' account. Any tax and/or dues imposed by vessel's flag/registry to Owners and/or crew and/or Charter hire to be for Owners account.

8

RIDER CLAUSES TO M.V. "SVITAYA" FEKS TERHSU
CHARTER PARTY DATED 14th FEBRUARY, 2007.

Clause 91    Drydocking
No drydocking except in case of emergency.

Clause 92    ISM Compliance
Vessel is ISM certified.

Clause 93
Owners confirm that the vessel has not traded under the present ownership commencing in July 1999 CIS Pacific and she is free from Asian Gypsy Moth, failing which all consequences / time to be for Owners' account.

Clause 94
Vessel's holds on delivery or latest arriving first loading port to be clean and dried up so as to receive Charterers' intended cargo in all respects free of salt, rust scale and previous cargo residue to the Charterers' satisfaction. Should the vessel not be approved by relevant surveyors as Charterers' intended cargo cleanliness, the vessel to be placed off-hire from the time of failing until the vessel is fully accepted by the relevant surveyors and any expenses and time incurred thereby to be for Owners' account.

Clause 95    Split Bill(s) of Lading
At the request of Charterers, Charterers and/or their agents are hereby authorised by Owners / Master to split Bill(s) of Lading and issue delivery orders against all full sets of original Bill(s) of Lading collected by Owners before vessel's arrival at discharging port.
Delivery orders to conform with all the terms and conditions and exceptions of Bill(s) of Lading and shall not prejudice Shipowners' rights.

Clause 96    Switch Bill(s) of Lading
The Charterers shall have the option to switch Bill(s) of Lading at a mutually agreed / appointed agents' office. Old all full sets of original Bill(s) of Lading to be surrendered to the appointed agents before new switched original Bill(s) of Lading can be issued and released, subject to Owners' approval.

Clause 97    Authorisation to sign Bill(s) of Lading
If required by Charterers to use their own Bill(s) of Lading, with reference to Lines 78/79 of the Charter Party, the Charterers and/or their agents are hereby authorised by the Owners to sign on Owners' / Master's behalf all Bill(s) of Lading as presented in accordance with Mate's receipts without prejudice to the Charter Party, but the Charterers are to accept the consequences that might result from the Charterers and/or their agents not adhering to the remarks in the Mate's / Tally Clerk's receipts.

Owners Additional Clauses

1- Any claim by Charterers relating to the performance of the vessel and/or the vessels equipment including speed claim are to be submitted to Owners in the form of a statement of claim with supporting docs within 60 days of completion of the voyage or otherwise to be waived and nullified.

2- All bunker supplied by Charterers during the course of the Charter Party to be in accordance with the specifications given in the vessels description.

3- All vessels certificates and official docs are in English language. If due to trading under this t/c , special certificates, documentation and/or translation of same will be required by local authorities, Charterers to arrange and be responsible for same at their time and expense. Any delay caused to vessels as a consequence of non compliance with the above is Charterers responsibility.

4- Re: cargo claims, Charterers are not allowed to negotiate or settle any cargo or other claims including fines for which Owners would be liable, also they are not allowed to grant time extensions for these claims without having Owners prior written approval of consent its understood that Charterers will keep Owners properly and timely advised for all such claims and also will furnish Owners with all relative docs and info in Charterers possession.

5- prior to making any claims for overconsuption / off hire / under performance Charterers give due credit for bunkers or time saved.

9

RIDER CLAUSES TO M.V. "ATATAYA EKATERINA"
CHARTER PARTY DATED 14TH FEBRUARY, 2007.

6- any cranes breakdown due to stevedore mishandling to be for Charterers account and vessel to be on full hire.

7- Charterers not to sublet the vessel to Nigerians, Haitians, Nicaraguans, Pakistani, Israeli, Iraqi registered/based/controlled/owned/domiciled companies.

8- Charterers also not to sublet vessel to the companies based / owned /registered / controlled / domiciled in the countries against whom U.N. sanctions may be imposed time to time.

9- Charterers agree that they will not authorize, incur, cause to be incurred or permit to be continued, any maritime lien or encumbrance on the vessel. Charterers will use best efforts to notify all suppliers, service providers and vendors of the existence of this prohibition of lien clause prior to or at the time the services and / or supplies are provided. The failure by Charterers, their agents and or representatives to make such notification shall constitute a breach of this charter party".

## BOTH TO BLAME COLLISION CLAUSE

. If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the United States of America, the following Clause shall apply:

## NEW BOTH TO BLAME COLLISION CLAUSE

"If the ship comes into collision with another ship as result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other non-carrying ship or her owners to the owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

## GENERAL AVERAGE AND THE NEW JASON CLAUSE

General Average shall be payable according to the York / Antwerp Rules, 1974, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:-

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

## GENERAL CLAUSE PARAMOUNT

The Hague Rules contained in the International Convention of the Unification of certain rules relating to Bills of Lading dated Brussels, 25th August, 1924, enacted in the country of shipment shall apply to this contract.
When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said conventions shall apply.
Trades where Hague-Visby Rules apply
In trades where the International Brussels Convention 1924, as amended by the protocol signed at Brussels on February 23rd, 1968 the Hague-Visby Rules apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading.
The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.
Or where applicable:

RIDER CLAUSES TO M.V. "GRAY FOX" / CALODIA
CHARTER PARTY DATED 14ᵀᴴ FEBRUARY, 2007.

## U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the provisions the Carriage of Goods by Sea Act of the United States approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (except as may be otherwise specifically provided herein) govern before the goods are loaded on and after they are discharged from the ships and throughout the entire time the goods are in the custody of the carrier. The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery or loss of or damage to the goods occurring while the goods are not in the actual custody of the Carrier.

## BIMCO STANDARD WAR RISK CLAUSE FOR TIME CHARTERS, 2004
### (CODE NAME : "CONWARTIME 2004")

(a)     For the purpose of this Clause, the words :

    (i)     "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

    (ii)    "War Risks" shall include any actual, threatened or reported : war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b)     The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c)     The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

(d)     (i)     The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

    (ii)    If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e)     If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

Case 1:07-cv-06161-NRB    Document 12-3    Filed 07/31/2007    Page 18 of 19

RIDER CLAUSES TO M.V. "SVYATAYA PETERINA"
CHARTER PARTY DATED 14TH FEBRUARY, 2007.

SIMPSON SPENCE & YOUNG

(f)  The Vessel shall have liberty:

(i)  to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii)  to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii)  to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv)  to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v)  to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(g)  If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(h)  If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

## BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES

a) (i)  From the date of coming into force of the International Code for the Security of Ships and of Port facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii)  Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or 'the Company' to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

b) (i)  The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-Charter Parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

(ii)  Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

12

TISDALE LAW OFFICES      Fax:203-254-1641                    Jul 21 2007 17:51am  P015/015

SIMPSON SPENCE & YOUNG

RIDER CLAUSES TO M.V. "SVYATAYA EKATERINA"
CHARTER PARTY DATED 14TH FEBRUARY, 2007.

c)  Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility of any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the ship security plan shall be for the Owners' account.

d)  If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.